# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HERBERT LEE LEMONS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| PENNSYLVANIA NATIONAL ) | 1:11CV257 |
| MUTUAL CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on a motion to dismiss by Defendant Pennsylvania National Mutual Casualty Insurance Company (docket no. 6). Plaintiff has responded in opposition to the motion. In this respect, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be dealt with by recommendation. For the following reasons, the motion to dismiss should be granted.

## I. Background and Alleged Facts

Plaintiff Herbert Lee Lemons, Jr. ("Lemons") filed this action in Guilford County Superior Court on March 9, 2011. On April 1, 2011, Defendant Pennsylvania National Mutual Casualty Company ("Penn National") removed the action to this court. On April 15, 2011, Defendant filed the pending motion to dismiss.

In considering the motion to dismiss, I must assume that the allegations and facts in the complaint are true. In May 2009, Lemons sustained serious and

permanent orthopaedic and neurological injuries in a car accident caused by Sheldona Sherise Odom ("Ms. Odom"). (Compl. ¶¶ 6, 8-9, 13-14; docket no. 9 at 1.) At the time of the accident, Ms. Odom had a $50,000 automobile liability policy with Erie Insurance Company ("Erie"). (*Id.* ¶¶ 10, 16.) Lemons had an automobile liability policy with Penn National, Policy Number AU90631066, including $1 million in underinsured motorist coverage. (*Id.* ¶ 11.)

After the accident, Lemons underwent back surgery to correct injuries that he and his surgeon attribute to the accident. (*Id.* ¶¶ 13-14.) His medical expenses totaled $37,709.39. (*Id.* ¶ 14.) Lemons' lawyer sent a demand package to Erie and Penn National in late 2009. (*Id.* ¶¶ 14-15.) In response, Erie tendered its entire $50,000 liability limit. (*Id.* ¶ 17.) Lemons' counsel then notified Penn National of Erie's tender. (*Id.* ¶ 18.) Penn National responded by waiving its right of subrogation against Ms. Odom. (*Id.*)

In March 2010, Lemons' doctor assigned him a 25 percent permanent partial disability rating. (*Id.* ¶ 20.) Lemons provided documentation of the disability rating to Penn National. (*Id.* ¶ 21.)

Penn National made Lemons a settlement offer of $45,000 for underinsured motorist benefits.[1] (*Id.* ¶ 22.) Lemons rejected the offer and opted for binding arbitration of his underinsured motorist claim per the insurance policy terms. (*Id.* ¶

---

[1] This settlement offer comprised a total offer to Lemons of $95,000 when taking into consideration the $50,000 policy limit already tendered by Erie.

24.) Penn National then increased its settlement offer to $55,000.[2] (*Id.* ¶ 26.) Lemons also rejected this offer. (*Id.*)

Arbitration proceedings began on January 18, 2011. (*Id.* ¶ 34.) Less than a month later, the arbitration panel awarded Lemons $185,000. (*Id.* ¶ 35.) This arbitral award is $80,000 higher than the highest of Penn National's settlement offers. Lemons then filed this action alleging three causes of action: breach of contract, unfair claim settlement practices under N.C. GEN. STAT. § 58-63-15(11) (2009), and unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1 (2009). Specifically, Lemons alleges that Penn National's conduct violated N.C. GEN. STAT. §§ 58-63-15(11)(g) & (h). (*Id.* ¶ 38.) Lemons seeks trebled damages and costs, including reasonable attorneys' fees. (*Id.* ¶¶ 40-41.)

## II. Motion to Dismiss Standard

Penn National filed a motion to dismiss Lemons' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true; and the complaint,

---

[2] This settlement offered Lemons a total of $105,000 when taking into consideration the $50,000 tendered by Erie.

including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

## III. Discussion

For the following reasons, Penn National's motion to dismiss Lemons' claims pursuant to FED. R. CIV. P. 12(b)(6) should be granted.

A. Lemons' Breach of Contract Claim

The elements of a breach of contract claim under North Carolina law are: (1) the existence of a valid contract, and (2) the breach of the terms of that contract. *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 536, 551 S.E.2d 546, 554 (2001) (citing *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)). North Carolina implies a covenant of good faith and fair dealing in every contract. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996) ("In

4

every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.") (citation omitted).

Here, Lemons has alleged that he had an insurance contract with Penn National that included $1 million in underinsured motorist coverage. (Compl. ¶ 11.) He also alleged that Penn National "fail[ed] to honor its contract of insurance by refusing to pay underinsured motorist benefits to [Lemons] as described herein." (*Id.* ¶ 42.) To support this allegation, he alleges that Penn National made two settlement offers for "substantially less than the amount ultimately recovered [in arbitration]." (*Id.* ¶¶ 22, 26, 33, 37.) Lemons claims that the offers were so inadequate that they were "less than the amount to which a reasonable man would have believed [Lemons] was entitled." (*Id.* ¶¶ 37-39.) Lemons concludes that "[t]he acts and conduct of Defendant Penn National in failing to honor its contract of insurance by refusing to pay underinsured motorist benefits to Plaintiff as described herein constitutes breach of contract." (Compl. ¶ 43.)

Lemons' allegations are not sufficient to survive a motion to dismiss the breach of contract claim. Lemons alleges no facts to support his contention that Penn National refused to pay under the policy. In fact, Penn National extended an offer to Lemons before the parties went to arbitration, and Penn National promptly paid the arbitration award. Plaintiff is, in reality, attempting to bring a claim for breach of contract against Penn National based on his contention that he was forced

5

to enter into arbitration because of Penn National's alleged low settlement offer. In a case with similar facts, the Eastern District of North Carolina recently rejected a similar contention.[3] *See Chew v. Progressive Universal Ins. Co.*, No. 5:09-cv-351, 2010 WL 4338352 (E.D.N.C. Oct. 25, 2010). In *Chew*, the plaintiff sought uninsured motorist benefits. When negotiations did not produce an offer satisfactory to the plaintiff, he demanded arbitration pursuant to the policy. The arbitration award was 5.4 times higher than the highest offer by the insured before the parties went to arbitration. The plaintiff then filed a lawsuit against the insured, bringing claims for breach of contract, unfair and deceptive trade practices, breach of the covenant of good faith and fair dealing.

The *Chew* court granted summary judgment to the insurer. In addressing the plaintiff's breach of contract claim, the court stated that "North Carolina courts have consistently rejected the view that an insured may sue an insurance company for breach of contract for failure to pay uninsured motorist benefits, instead holding that such actions take the form of a tort against the uninsured motorist, which the insurance company may defend." *Id.* at *7. The *Chew* court further observed that "the policy explicitly provides that an insured party may request arbitration in the event of a disagreement as to the amount of damages owed, which is precisely what

---

[3] Although *Chew* involved a ruling on summary judgment, the reasoning in that case also applies here. Here, the court has before it the specific facts needed to determine whether Plaintiff's allegations state a claim against Penn National as a matter of law.

happened here." *Id.* at *8. The *Chew* court ultimately granted summary judgment to the defendant on all of the plaintiff's claims.

I agree with the well-reasoned opinion of the court in *Chew* that an insured cannot bring a breach of contract claim against an insurer based on the insured's contention that he was forced to arbitrate where the parties disagreed over the value of the insured's claims. Allowing insureds to file lawsuits for breach of contract whenever the parties disagree over the amount of an insurer's claim would vitiate the entire purpose of the arbitration clauses in insurance policies such as the one in this case. Indeed, the process of arbitration is intended to allow an impartial arbiter to determine the value of an insured's claim when the parties reasonably disagree over the value. For these reasons, Penn National's motion to dismiss Lemons' breach of contract claim should be granted.

B. Lemons' Claims for Unfair Claims Settlement Practices under N.C. GEN. STAT. § 58-63-15(11)  and Unfair and Deceptive Trade Practices under N.C. GEN. STAT. § 75-1.1

Lemons also claims that Penn National's actions constituted unfair and deceptive trade practices and unfair claim settlement practices in violation of N.C. GEN. STAT. §§ 58-63-15(11) & 75-1.1. Although Lemons sets out these claims in separate counts, they are so interrelated that the court will consider them together. For the following reasons, Penn National's motion to dismiss these claims should be granted.

7

To state a claim for unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1, a plaintiff must show that the defendant committed: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, that (3) subsequently caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Penn National does not dispute that the alleged acts are "in or affect[] commerce." In clarifying what constitutes an unfair action, the North Carolina Court of Appeals explained:

> A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. When an insurance company engages in conduct manifesting an inequitable assertion of power or position, including conduct which can be characterized as unethical, that conduct constitutes an unfair trade practice.

*Country Club of Johnston County, Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 245, 563 S.E.2d 269, 279 (2002) (internal quotations omitted).

Section 58-63-15(11) defines unfair methods of competition as well as unfair and deceptive acts or practices in the insurance business. Violations of Section 58-63-15(11) are "acts which are unfair, unscrupulous, and injurious to consumers, and . . . therefore fall within the 'broader standards' of N.C. GEN. STAT. § 75-1.1." *Id.* at 246, 563 S.E.2d at 279. Lemons alleged two specific violations of § 58-63-15(11): "(g) [c]ompelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured," and "(h) [a]ttempting to settle a claim for less

8

than the amount to which a reasonable man would have believed he was entitled." (Compl. ¶¶ 36, 37.)

Here, as with the breach of contract claim, the court should find as a matter of law that Lemons has failed to allege that Penn National violated either Section 58-63-15(11) or 75-1.1. Lemons' medical expenses totaled $37,709.39. Furthermore, Lemons' doctor assigned him a 25 percent permanent partial disability rating. Penn National made Lemons an initial settlement offer of $45,000, which Lemons rejected. After Lemons opted for arbitration, Penn National then increased its settlement offer to $55,000. As noted, the settlement offered Lemons a total of $105,000 when taking into consideration the $50,000 tendered by Erie. The arbitration panel's ultimate award of $185,000 was $80,000 higher than the highest of Penn National's settlement offers. The fact that the arbitrator ultimately sided with Lemons and awarded him more than the amount tendered by Penn National does not *ipso facto* mean that Penn National engaged in unfair and deceptive trade practices or unfair claim settlement practices. The value of an insured's claim under an insurance policy is not an exact science. Lemons obviously believed that his claim was worth more than Penn National tendered to him before the parties went to arbitration, and the arbitrators ultimately agreed with Lemons that his claim was worth more than the amount initially offered by Penn National. This is not a case in which the insurer refused a demand for payment, or even where the amount offered was lower than a reasonable man would have believed he was entitled to be paid. Furthermore, this

is not a case in which the insured has been forced to file a lawsuit to recover amounts due under a policy. See N.C. GEN. STAT. § 58-63-15(11)(g). The amount to which Lemons is entitled to recover has already been determined in arbitration, and Penn National has paid to Lemons the full amount of $185,000.[4] For all these reasons, the court should grant Defendant's motion to dismiss Lemons' claims brought under Sections 58-63-15(11) and 75-1.1.

IV. **Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** the Motion to Dismiss. (docket no. 6.)

_____
WALLACE W. DIXON
United States Magistrate Judge

June 28, 2011

---

[4] As Defendant notes, Lemons has also failed to allege damages for purposes of his unfair and deceptive trade practices claim. Lemons was awarded and has been paid $185,000 in arbitration. Lemons simply cannot claim damages as a result of submitting his claim to arbitration when (1) he had agreed to do so pursuant to the contract for insurance for the parties and (2) Lemons initiated such arbitration.